Terence W. GUNNARI,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4409)

Trial was held June 20, 2000, in the courtroom of the Oregon Tax Court, Salem.

Terence W. Gunnari, Plaintiff (taxpayer), argued the cause *pro se*.

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered October 12, 2000.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appealed his 1993 personal income tax assessment. The assessment disallowed taxpayer's claimed bad-debt deduction and an offset of gain derived from the sale of taxpayer's principal residence.

## FACTS

Taxpayer, president and one-third owner of WCA Marketing, Inc. (WCA), tried to secure a $3 million loan on behalf of WCA from an overseas investor. In order to secure that loan, $15,000 in loan fees had to be paid first. Taxpayer approached his neighbor, Lewis P. Sandoz, for a loan. Without first checking WCA's corporate records, Sandoz loaned $5,000 to taxpayer that was secured by taxpayer's home located on 165th Court Street (Court Street home) in Aloha. Appropriate documents for that loan were drafted and later recorded July 6, 1992.

As additional compensation for making the loan, Sandoz was to receive two shares of WCA stock.[1] The loan terms indicated that both WCA *and* taxpayer agreed to pay back the $5,000 and two shares of stock. Taxpayer testified that although the loan terms did not indicate such, he and Sandoz both intended that WCA be the principal debtor and taxpayer would be WCA's guarantor.

According to taxpayer, Sandoz transferred the $5,000 directly to the loan officer who was awaiting WCA's loan-fee payment. However, taxpayer did not produce corporate records verifying that testimony.

The Sandoz loan was ultimately satisfied by taxpayer March 5, 1993, when taxpayer sold his Court Street home.[2] The home sold for $94,000.

---

[1] Taxpayer did not know what those shares of WCA stock were worth.

[2] At trial there was some disagreement regarding the actual satisfaction date of the Sandoz loan. Of all the evidence provided, the court gives the greatest weight

Shortly thereafter on May 28, 1993, taxpayer's sister Juanita Callopy bought a $137,000 duplex. Taxpayer and his sister both testified that taxpayer paid the $16,669 duplex down payment.

Although taxpayer paid the down payment, the Buyer Settlement Statement showed that Callopy was the duplex's sole owner. Taxpayer and Callopy both testified that despite what the Buyer Settlement Statement showed, taxpayer had an ownership interest in the duplex. To effectuate that interest, an Agreement of Sale from Callopy to taxpayer was drafted and signed by Callopy. As part of that transaction, a $61,650 Mortgage Deed was also drafted and signed by taxpayer. The Agreement of Sale and Mortgage Deed were never recorded. It was taxpayer's and Callopy's intent that taxpayer's ownership interest not arise during the initial duplex purchase. They feared that taxpayer's bad credit would endanger Callopy's ability to obtain a mortgage.

Callopy claimed that taxpayer had a $94,000 interest in the duplex.[3] On his 1993 return, taxpayer claimed that a $94,000 interest in the duplex offset any recognition of gain from the Court Street home sale. He also treated the Sandoz loan repayment as a bad-debt deduction. The department disallowed both the deduction and the offset. Taxpayer appealed.

## ISSUES

1. Does taxpayer's satisfaction of the Sandoz loan qualify for bad-debt deduction treatment? 2. Does taxpayer have an interest in the duplex that will offset gain realized from the sale of his Court Street home?

## ANALYSIS

A. *Bad Debt*

■ Taxpayers must show two things before they can claim an Internal Revenue Code (IRC) section 166 bad-debt

---

to the title company's final closing statement. That document shows the loan satisfaction occurring March 5, 1993.

[3] However, at trial taxpayer testified, and documents showed, that his interest was actually $78,319 ($16,669 down payment plus $61,650 mortgage).

deduction.[4] First, they must show that the debt was "worthless." *See Cox v. C.I.R.*, 68 F3d 128, 131 (5th Cir 1995). Second, the debt must have been created or acquired in connection with taxpayer's trade or business. *See Jeddeloh v. Dept. of Rev.*, 282 Or 291, 578 P2d 1233 (1978).

■ "A debt becomes wholly worthless when there are reasonable grounds for abandoning any hope of repayment in the future." *Cox*, 68 F3d at 131-32.

> "A guarantor required to pay under his guaranty may deduct payment as a bad debt if the guarantor is subrogated to the creditor's claim against a debtor *from whom recovery is impossible*. The guarantor must prove not only that the guaranty was bona fide but also that the right to recover was worthless." Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation*, § 30.22 (rev 1999) (emphasis added).

■ Taxpayers must also prove that they are engaged in a trade or business and that their debt was "proximately related" to their trade or business. *See Jeddeloh*, 282 Or at 298. A proximate business relationship exists only where a taxpayer's dominant and not merely significant motivation for granting the loan is for business reasons. *Id.* at 299.

■ When shareholder-employees, in order to protect their individual investment, guarantee their corporation's loan, they are acting with nonbusiness motives. Conversely, if they guarantee their corporation's loan in order to protect their employment, then they are acting with business motives. *See Brooks v. C.I.R.*, 59 TCM (CCH) 682, 686 (1990). Taxpayers bear the burden of showing their dominant motivation. *See id.*

Here, no evidence indicated that taxpayer's guaranty transformed into an obligation to pay a debt. A guarantor's obligation arises *only when* the principal obligor cannot pay the debt. Evidence here indicated that payment of the loan was made because taxpayer desired to sell his house and needed to satisfy the mortgage created by the $5,000 loan. Taxpayer did not show that WCA was incapable of repaying

---

[4] This list is not exhaustive.

the $5,000. Therefore, the court does not conclude that the debt was worthless.

Taxpayer also failed to show that his dominant motivation for guaranteeing the Sandoz loan was business-related. At trial, taxpayer testified that the Sandoz loan was "a loan to expand the company." The loan document itself revealed that the loan was "for the purpose of resuming business in the auto industry." No records were presented to show that the $5,000 was actually used by WCA and not by taxpayer personally. Nothing indicated that taxpayer's dominant motivation for guarantying the loan was to protect his employment. Therefore, the court finds that taxpayer's dominant motivation for making the loan was not business-related.

The court is not persuaded that repayment of the Sandoz loan constituted repayment of a worthless business debt. Therefore, taxpayer may not treat the loan satisfaction as a bad-debt deduction.

### B. *Nonrecognition of Gain From Sale of Principal Residence*

■ IRC § 1034 indicates that gain realized from the sale of one's principal residence is not recognized if the proceeds are used within two years to purchase another principal residence. It is axiomatic that taxpayer must have legal title to both the residence sold and the new residence purchased. *See Marcello v. C.I.R.*, 380 F2d 499, 502 (5th Cir 1967). Here, taxpayer's first residence was sold March 5, 1993, for $94,000. From that sale, taxpayer realized a $30,878 gain. Taxpayer purchased his next principal residence, a portion of Callopy's duplex, on May 28, 1993.

The department claimed that taxpayer did not have legal title to the duplex. To counter that claim, taxpayer produced an Agreement of Sale and Mortgage Deed. The department argues that the Agreement of Sale was not signed by taxpayer, the Mortgage Deed was not signed by Callopy, and neither of those documents had been recorded.

■ Real property may be conveyed by deed, signed by the grantor, and acknowledged by the grantee. ORS 93.010 (1991). In this case, the Agreement of Sale was signed by Callopy (the grantor) and acknowledged by taxpayer. That

document was not recorded. However, a conveyance can be valid even if unrecorded. *See Nelson v. Hughes*, 290 Or 653, 657, 625 P2d 643 (1981). An unrecorded land sale contract "is void *only as between it and a conveyance to a subsequent purchaser* in good faith for value who first records." *Id.* at 661 (emphasis added). Here, an "Agreement of Sale" signed by Callopy and delivered to taxpayer conveyed part of the duplex to taxpayer. No signature by taxpayer was required.

Ultimately, evidence showed that the following transactions occurred. Taxpayer sold his home. Callopy bought a duplex. Callopy then sold part of her interest in that duplex to taxpayer. Taxpayer gave Callopy a $61,650 mortgage in his duplex interest to secure payment. That along with the $16,669, used for the down payment, gave taxpayer a $78,319 interest in the duplex that may be used to offset gain on the sale of his Court Street home.

Lastly, at trial the department conceded that an additional $1,063.88 interest payment should have been included when calculating taxpayer's itemized deductions.

In summary, the $5,000 used to satisfy the Sandoz loan does not qualify for bad-debt treatment by taxpayer. However, taxpayer is entitled to offset the gain realized from the sale of his Court Street home by the $78,319 paid for his duplex interest. He is also entitled to an additional $1,063.88 itemized deduction for interest paid. Judgment will be entered accordingly. Costs to neither party.